UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:23-cv-50-MOC

| | |
|---|---|
| TAMMY DANCY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 4, 7). Plaintiff brought this action for review of Defendant's final administrative decision denying Plaintiff's claim for disability benefits. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Facts and Background

On October 13, 2020, Plaintiff filed an application for a period of disability and disability insurance under Title II of the Act, alleging disability since November 1, 2019. (Tr. 65, 224–27). Plaintiff's application was denied initially and upon reconsideration. (Tr. 65, 131–35, 145–49). Thereafter she filed a written request for a hearing. (Tr. 65, 150–52). An ALJ held a hearing on November 4, 2021, at which Plaintiff, her attorney, and a vocational expert ("VE") appeared. (Tr. 65, 85–117). On November 30, 2021, the ALJ decided that Plaintiff was not disabled within the meaning of the Act. (Tr. 65–73). The Appeals Council denied review of the ALJ's decision

on January 6, 2023. (Tr. 10–16). Plaintiff now seeks review of that decision in this Court pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

The Court adopts and incorporates the ALJ's findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Discussion

### a. Substantial Evidence

#### i. Introduction

The Court has reviewed the transcript of Plaintiff's administrative hearing, the decision of the ALJ, and the relevant exhibits contained in the extensive administrative record. The issue is whether the decision of the ALJ is supported by substantial evidence, not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials.

#### ii. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity ("SGA") will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### b. The Administrative Decision

For the purposes of Titles II of the Act, "disability" means "the inability to do any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ followed the five-step sequential evaluation in her analysis of Plaintiff's alleged disability. See 20 C.F.R. § 404.1520(a).

In particular, the ALJ found, at step one of the sequential evaluation, that Plaintiff had not engaged in SGA since the alleged onset date (Tr. 67), and at step two that Plaintiff had the following severe, medically determinable impairments: spinal degenerative disc disease; scoliosis; and migraine headaches. (Tr. 67). The ALJ also thoroughly evaluated other medical conditions and determined that they were either not medically determinable or nonsevere. (Tr. 67–69). The ALJ then found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 69).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) except she could frequently but not constantly push/pull with the (dominant) right upper extremity and only occasionally use the right upper extremity for overhead reaching; avoid more than moderate noise, vibrations and workplace hazards; avoid concentrated exposure to temperature extremes, dust, fumes, chemicals, noxious odors, and poor ventilation. (Tr. 70). The ALJ then found at step four, that Plaintiff was able to perform her past relevant work as a hospital admitting clerk. (Tr. 72). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Act since the alleged onset date through her date of last insured. (Tr. 72).

### c. Plaintiff's Assignments of Error

Plaintiff raises two assignments of error. She first argues that the ALJ erred in her RFC analysis. (Pl. Br. 4–7). Specifically, Plaintiff argues that the ALJ did not properly evaluate the impact of her migraines in the RFC. (Pl. Br. 5). In her second assignment of error, Plaintiff argues that the ALJ erred at Step Four by failing to identify and resolve an apparent conflict between the VE's testimony and the DOT before relying on the VE's testimony.

#### i. The ALJ's Evaluation of Plaintiff's RFC

The RFC is the most a claimant can do in a work setting, 20 C.F.R. § 404.1545(a)(1). The claimant bears the burden of proving the extent of his limitations. Id. at § 404.1512(a) ("[Y]ou have to prove to us that you are . . . . disabled."). The ALJ must include a claimant's credibly established limitations only, not all alleged limitations. See 20 C.F.R. § 404.1529 (discussing the factors relevant to assessing alleged limiting effects of impairments). If an ALJ's factual determinations in the RFC assessment enjoy more than a scintilla of evidentiary support, the must affirm the ALJ's findings. See Biestek, 139 S. Ct. at 1154.

Here, the ALJ carefully considered each of Plaintiff's severe impairments, including her migraine headaches during the relevant period, and included limitations in the RFC that were supported by the evidence presented. (Tr. 65–73). Plaintiff alleges a disability onset date of November 1, 2019, and her date of last insured status was June 30, 2020. (Tr. 65, 224–27). Therefore, the relevant time-period is just over seven months.[1] The evidence during the relevant time-period fails to support that greater limitation was needed than what was included in the RFC. (Tr. 313–46). The ALJ acknowledged Plaintiff's reports of experiencing 22 to 25 headaches a month with severe neck and head pain; nausea; vomiting; and sensitivity to light, sounds, and smells. (Tr. 92–100, 67–72). However, the ALJ pointed to treatments records, which reflected no more than conservative treatment for her migraines and a two-year span with no record of treatment for migraines, despite her allegations that her impairments were disabling. (Tr. 893–96). In fact, treatment records from Wake Forest Baptist Medical Center indicate Plaintiff did not complain of headaches or migraines between March 2019 and September 2020, and she did not report to those treatment providers that her medications were ineffective. (Tr. 313–446). Additionally, her neurological and psychiatric findings during the relevant time-period consistently included normal mood and affect, intact memory, and normal concentration. (Tr. 447–848). Moreover, during those evaluations she presented as alert and oriented and not in any distress. (Tr. 447–848).

The ALJ thoroughly explained why these complaints were inconsistent with the longitudinal history. (Tr. 15–20). The ALJ also explained that Plaintiff's treatment was generally routine and conservative in nature. (Tr. 65–73). See 20 C.F.R. § 404.1529(c)(3)(v). The Fourth

---

[1] For entitlement to disability insurance benefits, Plaintiff must show that she was disabled before the date her insured status expired. 20 C.F.R. § 404.131(a).

Circuit has held that an ALJ may consider a lack of medical treatment as a factor in disability determinations. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984); see also Buckley v. Comm'r of Social Sec. Admin., No. 1:14-CV-00124-TLW, 2015 WL 3536622 (D.S.C. June 4, 2015); accord Campbell v. Colvin, No. 1:13-cv-233, 2014 WL 6680369, at *5 (W.D.N.C. Nov. 25, 2014); Riegel v. Colvin, No. 7:12-CV-526, 2014 WL 462525, at *8 (W.D. Va. Feb. 5, 2014) ("Lovejoy and its progeny do not in any way preclude the ALJ from considering inconsistencies in the record that undermine Riegel's credibility.").

Here, Plaintiff presented in July 2019 with reports of daily migraines over the past two months. (Tr. 71, 447–848). She reported that the medication Maxalt reduced the intensity of her headaches. (Tr. 71, 447–848). On November 7, 2019, Plaintiff presented for evaluation of recurrent headaches. (Tr. 447–848). She was prescribed conservative treatment and advised to consult neurology if her headaches persisted. (Tr. 71, 447–848). Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); see also Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965); Cf. 20 C.F.R. § 404.1530(b).

Plaintiff did not follow up with a neurologist until 2021, nearly two years after her initial evaluation. (Tr. 893–96). See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (the inconsistency between allegations and treatment sought is probative). An ALJ can consider a lack of medical treatment as a factor in disability determinations. 20 C.F.R. § 404.1529(c)(3)(iii)–(vii); see also 20 C.F.R. § 404.1530.

Although Plaintiff disagrees with the ALJ's observations, the ALJ may draw meaningful inferences from the facts. See 20 C.F.R. § 404.1520b; Gatson v. Berryhill, 1:17-cv-182, 2018

-7-

Case 5:23-cv-00050-MOC   Document 9   Filed 10/18/23   Page 7 of 12

WL 3873593, at *6 (W.D.N.C. Aug. 15, 2018) (stating that it is not improper for the ALJ to consider the absence of evidence when formulating the RFC); accord Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (stating that the commissioner is entitled to rely not only on what the record says, but also on what the record does not say). Thus, Plaintiff fails to demonstrate how the ALJ's RFC evaluation was improper or otherwise does not comport with the applicable law.

In support of her argument, Plaintiff cites to Shelley C. v. Comm'r, 61 F.4th 341 (4th Cir. 2023). (Pl. Br. 6). However, as Defendant notes, Shelley C. involved errors that are not present here. The ALJ in Shelley C. erred because he "dismiss[ed] Shelley C.'s subjective complaints based entirely upon the belief that they were not corroborated by the record's medical evidence." 61 F.4th at 360. Thus, the ALJ erred by "requiring that her subjective statements be validated by objective medical support." 61 F.4th at 362 (citing Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 96 (4th Cir. 2020)). Instead, an ALJ "is required to balance the record evidence as '[a] report of . . . inconsistencies in the objective medical evidence is one of the many factors . . . consider[ed] in evaluating'" the intensity and persistence of the claimant's symptoms. 61 F.4th at 360 (emphasis added) (quoting SSR 16-3p, 2016 WL 1119029, at *5). Further, the ALJ in Shelley C. concluded that the claimant's statements were inconsistent with her mental status examinations and treatment history, which were not, in fact, "generally benign" or "routine and conservative," respectively, as the ALJ stated. Id. at 362–64.

Here, on the other hand, the ALJ properly summarized the objective evidence and Plaintiff's course of treatment, and the ALJ did not suggest (or require) that Plaintiff's alleged limitations must be validated by objective support. To the contrary, the ALJ relied on Plaintiff's own subjective reports to her treatment providers that her migraines improved with the

-8-

Case 5:23-cv-00050-MOC   Document 9   Filed 10/18/23   Page 8 of 12

medication they prescribed. (Tr. 635). Thus, unlike the ALJ in Shelley C., the ALJ did not dismiss subjective complaints based entirely on the belief that they were not corroborated by the medical evidence, nor did the ALJ require objective medical evidence to validate the subjective statements. (Tr. 63–77).

While Plaintiff disagrees with how the ALJ weighed this evidence, weighing conflicting evidence is quintessentially the province of the ALJ, not a reviewing court. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].").

Here, the ALJ made reasonable factual findings that did not "dismiss" Plaintiff's subjective complaints "based entirely upon the belief that they were not corroborated by the record's medical evidence." Shelley C., 61 F.4th at 360 (emphasis omitted). Instead, the ALJ correctly "balance[d] the record evidence." Id. (citing SSR 16-3p, 2016 WL 1119029, at *5). The ALJ credited Plaintiff's subjective complaints to a significant extent in limiting her to work that did not require exposure to noise, vibration, and workplace hazards; and no more than occasional public interaction. (Tr. 70). The ALJ's analysis comports with law, and her factual findings will not be disturbed. Plaintiff fails to show that greater level of limitation was needed than what was included in the RFC. Thus, substantial evidence supports the ALJ's finding as to Plaintiff's RFC.

### ii. The VE's Testimony at Step Four

At the fourth step of the sequential evaluation process, the ALJ determines whether a claimant can perform her past relevant work, as actually or generally performed. 20 C.F.R. § 404.1520(f). In identifying jobs, the Agency may take administrative notice of "reliable job

information" found in the DOT. 20 C.F.R. § 404.1566(d). The regulations also provide for the use of VEs to provide occupational evidence. 20 C.F.R. § 404.1566(e).

The Agency issued SSR 00–4p to provide guidance to resolve conflicts between these two sources of information. 2000 WL 1898704, at *1 (S.S.A). The Agency recognized that a "[vocational expert] . . . may be able to provide more specific information about jobs or occupations than the DOT." Id. at *3. Nonetheless, "[w]hen there is an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] . . . evidence to support a determination or decision about whether the claimant is disabled." Id. at *2. The Fourth Circuit requires ALJs to independently identify conflicts between the VE's testimony and the DOT and has found that the ALJ cannot ignore apparent conflicts on the basis that the VE testified that no conflict existed. Pearson v. Colvin, 810 F.3d 204, 209–11 (4th Cir. 2015).

Here, the VE testified that a person with Plaintiff's vocational background and RFC would be able to perform her past relevant work as a hospital admitting clerk. (Tr. 65–73). Plaintiff argues that there are unresolved conflicts between the ALJ's step four finding and VE's testimony with respect to Plaintiff's past relevant work. (Pl. Br. 12–15). In response, Defendant notes that Plaintiff's counsel did not question the VE about any "apparent" conflicts between the VE's testimony and the DOT as to overhead reaching. (Tr. 116). Citing a Seventh Circuit case, Defendant argues that it is, therefore, too late to raise this argument. See Donahue v. Barnhart, 279 F.3d 441, 447 (7th Cir. 2002) (noting that "[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's" and stating that "[r]aising a discrepancy

-10-

[concerning the VE's testimony] only after the hearing . . . is too late."). However, the Fourth Circuit has held that:

> An ALJ cannot rely unquestioningly on a VE's testimony. Rather, an ALJ must ensure that any "apparent" conflicts between the Dictionary and the VE's testimony are reasonably resolved. SSR 00-4P, 2000 WL 1898704 at *2. To that end, the ALJ must ask the VE whether his or her testimony conflicts with the DOT. If the answer is "yes," the ALJ "must elicit a reasonable explanation for the conflict before relying on" the testimony. Id. But even if the VE answers "no," the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015). This means that the ALJ must recognize and resolve ways in which a VE's testimony "seems to, but does not necessarily," conflict with the "express language" of the DOT—even if the conflict is not "obvious." Id. at 209.

Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019). Here, the Court agrees with Plaintiff that remand is necessary for the ALJ to explore and discuss a possible conflict between the VE's testimony and the DOT.

## V. Conclusion

The Court remands to the ALJ for further findings in accordance with this Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 7) is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

Signed: October 18, 2023

Max O. Cogburn Jr.
United States District Judge

-11-